Barney, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
This is a suit arising out of a contract to furnish armor plates to the Navy Department. The claim is for additional expenses incurred in carrying the bond required under the terms of the contract to be given by the plaintiff, and the question at issue is during what time and for what sums the plaintiff was required to keep said bond in force. Article XV of the contract is as follows:
“ Fifteenth. The party of the first part (Bethlehem Steel Company) shall give a bond with satisfactory sureties for *396 the faithful performance of the work embraced in this contract in a penal sum equal to ten per cent of the total cost of the armor of classes A, B, 0, D, and E, as specified in article first of this contract, and at the end of each calendar year the amount of said bond may be reduced to correspond to the estimated cost of armor then undelivered under this contract.”
As required by this article of the contract, the plaintiff furnished a bond in the sum of $195,000, that sum being something more than 10 per cent of the total cost of the armor required to be furnished by the terms of the contract. From time to time the plaintiff made deliveries in installments of armor plates as provided by Article I of the contract, a record of which was kept by the department, and all of the armor plate called for by the contract was delivered in the manner above stated on or before May 2, 1911. As to the particular dates when the several installments were delivered, the record does not show. No reduction of the bond required and given, as provided by Article XY, was made by the Government, and no such reduction was asked for by the plaintiff until January 27, 1912. The Secretary of the navy refused to relieve the plaintiff from the obligations of said bond except upon the following conditions: (1) That the additional armor required for the fire-control tower of the Arkansas should be treated as the last group under the original contract, and a reserve of 10 per cent of its cost when determined should be retained, as contemplated by paragraph 3 of clause 13 of the contract, the reservation on previous groups to be paid subject, however, to the assent of the sureties on the bond, unless it was found that all the armor originally required had been fastened on the ship for six months and that all of said armor proving defective had been replaced. (2) That to secure the replacement of any plates of the fire-control tower of the Arkansas that might prove defective the plaintiff should give a bond in a sum equal to 10 per cent of the cost of the same. Upon these conditions the Secretary agreed to consider the bond of $195,000 as fulfilled, except with regard to the replacement of rejected armor plates, but refused to cancel the same. In compliance with this condition the plaintiff furnished the *397 bond in the sum of $3,500, conditioned for the replacing of any armor plates of the said fire-control tower that might prove defective.
March 9, 1912, the Secretary of the Navy offered to cancel the original bond if the plaintiff would furnish a third bond in the sum of $30,000 conditioned for the fulfillment of the plaintiff’s obligation to furnish replacing plates under the original contract. The plaintiff furnished this bond, which was approved, and the $195,000 bond was considered as superseded. A board appointed for that purpose by the Secretary of the Navy found the cost of the additional armor for the fire-control tower of the Arkansas to be $31,706.92, which report was approved by the said Secretary and accepted by the plaintiff. Of this amount there still remains unpaid to the plaintiff the sum of $3,170.69.
It is contended by the plaintiff that by the terms of Article XY of the contract above quoted, to be construed in connection with certain provisions of the specifications, the Secretary of the Navy was obligated to cancel said bond of $195,000 on May 2, 1911, that being the date when the last group of armor plates was provisionally delivered under the original contract, while it is contended by the defendants that said bond by its terms should remain in full force and effect until the final completion of the contract, i. e., until the provisions of section 75 of the specifications had been fully complied with. Said section 75 is as follows:
“75. Plates that develop defects after delivery sufficient to cause rejection, or that show cracks, due to faulty manufacture, within six months after being fastened on the ship, must be replaced by the contractor without delay, and the actual cost and the damage, if any, to the shipbuilders due to the installation and removal of such defective plates must be paid by the contractors.”
We are constrained to agree with the plaintiff that the bond required by Article XY above quoted was only for the provisional delivery of the armor plate as required by the contract, and had no reference to th§ replacement of such armor plate as might prove defective. We come to this conclusion (1) from the fact that the word “delivery” as used in all other parts of the contract has reference only to such *398 conditional delivery; (2) the language of section 3 of Article XIII of the contract indicates to our minds that the reservation of 10 per cent from the price of each group as delivered was intended to secure the defendants from damages on account of defective armor plates. That section is as follows:
“3. There shall be a reservation of 10 per cent from the price of each group of armor delivered under this contract, to be retained until the group shall have been completed: Provided, That such reservation on the last group pertaining to the armor for any particular vessel shall be retained until all the armor furnished by the party of the first part for such vessel has been in place for a period of six months, in accordance with the requirements of the circular and specifications forming part of this contract.”
(3) Any other construction of said Article XV would render the provision for the reduction of the bond absolutely nugatory, for if we construe it to be reduced only after the full performance of the contract by the plaintiff, i. e., not until after all defective plates had been delivered and accepted, there would be no benefit accruing to the plaintiff, because it would then be canceled by operation of law and there could have been no intermediate reduction. We can not agree with the contention of the defendants that the condition of the bond being for the performance of the contract that that necessarily means for the final performance of the contract, for Article XV was a part of the contract; and if it in any way limited the application of the bond it must be construed as well as any other provision of the contract.
It is elementary that where the language of an instrument requires construction it shall be taken most strongly against the party preparing the instrument. Garrison v. United States, 7 Wall., 688; Simpson v. United States, 31 C. Cls., 392.
The result of our opinion as to the interpretation to be given to Article XV is that the conditions of the bond for $195,000 had been fully complied with on May 2, 1911, when the last armor plate was provisionally delivered and accepted. If the plaintiff incurred any further expense in carrying that bond after that date, it was a voluntary act *399 on its part, and any expense incurred by it is not a charge against the defendants. It is true that in response to the demand of the plaintiff for the cancellation of this bond the Secretary of the Navy offered to do so if the plaintiff would furnish another bond in the sum of $30,000, conditioned for the replacement of defective armor plates. The plaintiff furnished this additional bond and the Secretary of the Navy expressed himself as considering the original bond superseded. The expense of this bond to the plaintiff was unnecessary, and if the Secretary of the Navy, by threatening annulment of the contract or the threatening deprivation of any right under it, had compelled the plaintiff to incur this expense and he had furnished it under protest, it is possible that it might recover for such unnecessary expense. None of these conditions appears. On the contrary, this change in the bonds appears to have been an arrangement with which the plaintiff was entirely satisfied.
It follows, therefore, that the expense incurred by the plaintiff in this behalf was without protest, and indeed voluntary, and for which there can be no recovery. It might be here remarked that both parties seem to have construed the original bond as securing the entire performance of the contract until January 27,1912, when the plaintiff asked for its cancellation. Such request was not necessary, as the bond was then fv/nctus officio. It does not appear that at the end of the calendar years 1909 or 1910 there was any occasion for the reduction of the bond under Article XV, and no reason occurred for such action during the whole life of the contract relating to the provisional delivery of armor plate, for on the 2d day of May, 1911, all of the armor plate was provisionally delivered and accepted and on that date all of its conditions had been complied with, and, of course, it then required no reduction to relieve the plaintiff from further expense under it.
It follows from the foregoing that the plaintiff is not entitled to recover for any expense incurred by it in maintaining the $195,000 bond subsequent to May 2, 1911, but is entitled to judgment in the sum of $3,170.69, the balance due upon the contract for the furnishing of the armor for the fire-control tower of the Arkansas.